UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| AARON J. SMITH, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 1:21-cv-00243-TWP-TAB |
| | ) |
| D. REAGLE, Warden, | ) |
| BOLDMAN, Captain, | ) |
| BRAMBACH[1], Sergeant, in the individual and | ) |
| official capacities, | ) |
| | ) |
| Defendants. | ) |

**ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DIRECTING ENTRY OF FINAL JUDGMENT**

This matter is before the Court on the Defendants D. Reagle's ("Warden Reagle"), Boldman's ("Captain Boldman"), and Brumback's ("Sergeant Brumback") (collectively "Defendants") Motion for Summary Judgment (Dkt 31). Plaintiff Aaron J. Smith ("Mr. Smith"), a prisoner currently incarcerated at Miami Correctional Facility ("MCF"), initiated this action alleging the Defendants deprived him of adequate hygiene products in violation of the Eighth Amendment; confiscated his property without a hearing in violation of the Fourteenth Amendment; and confiscated his religious items for ten days in violation of the Religious Land Use and Institutionalized Persons Act ("RLUIPA"). He also brings claims based on these allegations under the Indiana Constitution. For the reasons explained below, Mr. Smith's federal claims are dismissed, and the Court relinquishes supplemental jurisdiction over the state law claims. Accordingly, the Motion for Summary Judgment is **granted** and this action is now **dismissed**.

---

[1] The correct spelling of Defendant's name is Brumback (*see generally*, Dkt 24).

## I.     SUMMARY JUDGMENT STANDARD

The purpose of summary judgment is to pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial." *Matsushita Electric Industrial Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 106 S.Ct. 1348 (1986), *see* Fed. R. Civ. P. 56(a). Summary judgment is appropriate when there is no genuine dispute as to any of the material facts, and the moving party is entitled to judgment as a matter of law. *Id.*; *Pack v. Middlebury Comm. Sch.*, 990 F.3d 1013, 1017 (7th Cir. 2021). A "genuine dispute" exists when a reasonable factfinder could return a verdict for the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "Material facts" are those that might affect the outcome of the suit. *Id.*

When reviewing a motion for summary judgment, the court views the record and draws all reasonable inferences from it in the light most favorable to the nonmoving party. *Khungar v. Access Cmty. Health Network*, 985 F.3d 565, 572-73 (7th Cir. 2021). It cannot weigh evidence or make credibility determinations on summary judgment because those tasks are left to the factfinder. *Miller v. Gonzalez*, 761 F.3d 822, 827 (7th Cir. 2014). The court is only required to consider the materials cited by the parties, *see* Fed. R. Civ. P. 56(c)(3); it is not required to "scour every inch of the record" for evidence that is potentially relevant. *Grant v. Tr. of Ind. Univ.*, 870 F.3d 562, 573-74 (7th Cir. 2017).

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 323 (1986). "[T]he burden on the moving party may be discharged by 'showing'—that is, pointing out to the district court—that there is an absence of evidence to support the nonmoving party's case." *Id.* at 325.

## II.     FACTUAL BACKGROUND

This lawsuit involves the alleged removal of religious items and hygiene products from Mr. Smith's cell for ten days, while he was incarcerated at Pendleton Correctional Facility ("Pendleton"). (*See* Dkt. 1; Dkt. 31-1.) On October 27, 2020, Mr. Smith was assigned to G Cell House, a segregation unit at Pendleton. (Dkt. 31-1 at 8.)  He was informed by Sergeant Brumback that he was being placed on strip cell status for allegedly assaulting a correctional officer with bodily waste.  *Id.* at 10. The procedure for placing a prisoner on strip cell status is set forth in Facility Directive 48. *Id.* at 26.  Facility Directive 48 was instituted by Warden Reagle and is not a statewide policy.  *Id.* at 26; Dkt. 1 at ¶ 19.

Mr. Smith is Muslim. When he was placed on strip cell status, all of his property was removed from his cell, except for his shorts and shower shoes, a washcloth, a towel, and a mattress.(Dkt. 31-1 at 11.)  Captain Boldman ordered Sergeant Brumback to remove Mr. Smith's prayer rug, prayer books, Qur'an and Dhikr beads in accordance with Facility Directive 48.  *Id.*; Dkt. 1 at ¶¶ at 15, 16.  Mr. Smith's property and religious items were returned to him after ten days, when he was removed from strip cell status.  (Dkt. 1 at ¶ 17.)  As a practicing Muslim, Mr. Smith performs salat, which is a ritual prayer that Muslims perform five times a day in a set form.  (Dkt. 33-1 at 24.)  Before salat, Mr. Smith must perform wudu—a ritualistic cleansing that involves placing fresh water on the hands, forearms, face, head, nose, and feet.  *Id.* at 15.  If his body is dirty, or if he recently had a seminal emission, Mr. Smith must perform ghusl before salat.  *Id.* at 15.  Ghusl involves taking a full bath or full shower with water and using something to cleanse the body.  *Id.*

When he was on strip cell status, Mr. Smith's cell had a sink with running water that was sufficient for performing wudu.  *Id.* at 18.  He was allowed to shower three times a week, and these

3

showers were sufficient for performing ghusl. *Id.* at 19, 20. Mr. Smith recalls that he had a seminal emission at some point when he was on strip cell status. *Id.* at 17. He does not recall the specific date of this emission, and it is unclear whether there was a long period between the emission and his next shower. *Id.* at 17, 20-21.

Mr. Smith performed salat on each of the ten days he was on strip cell status. *Id.* at 25. However, his bath towel was not sufficient to use as a prayer rug during salat because he used the towel to dry himself after showering and because laundry services were only offered twice a week. *Id.* at 25, 26. He was also not able to use his prayer books as a resource during salat. *Id.* at 22.

Mr. Smith was transferred to MCF in November 2021. (Dkt. 31-1 at 7.) Since arriving at MCF, Mr. Smith has had consistent access to the religious items he needs for prayer. *Id.* at 27.

### III. DISCUSSION

Mr. Smith proceeds with his Fourteenth Amendment due process claims, Eighth Amendment conditions of confinement claims, and RLUIPA claims against the defendants. His claims for declaratory and injunctive relief proceed against Warden Reagle in his official capacity and his claims for declaratory and injunctive relief under the Art. 1, §§ 2, 12, and 16, proceed against Warden Reagle in his official capacity. (Dkt. 11 at 4).

The Defendants—Warden Reagle, Captain Boldman, and Sergeant Brumback—argue that Mr. Smith did not suffer an Eighth Amendment violation because he was allowed to shower three times a week, and the temporary denial of hygiene products for ten days did not pose an objectively serious risk to his health or safety. (Dkt. 32 at 5.) Defendants argue that the Indiana Tort Claims Act ("ITCA") provides an adequate post-deprivation remedy to satisfy due process. *Id.* at 6. And that his claims for declaratory and injunctive relief under RLUIPA and the Indiana Constitution are moot due to his transfer to another facility. *Id.* at 7.

4

The Court will address each of these arguments in turn.

A. **Eighth Amendment**

Prison conditions may be harsh and uncomfortable without violating the Eighth Amendment's prohibition against cruel and unusual punishment. *Farmer v. Brennan*, 511 U.S. 825, 833–34 (1994). Conditions of confinement count as cruel and unusual punishment in violation of the Eighth Amendment when they deny a prisoner "the minimal civilized measure of life's necessities." *Rhodes v. Chapman*, 452 U.S. 337, 347 (1981). The minimal civilized measure of life's necessities include access to showers and hygiene items. *Gillis v. Litscher*, 468 F.3d 488, 493 (7th Cir. 2006); *Jaros v. Illinois Dept. of Corrections*, 684 F.3d 667, 670 (7th Cir. 2012). To prevail on an Eighth Amendment claim, a plaintiff must show that (1) he was subjected to an objectively serious condition that posed a substantial risk of serious harm; and (2) that the defendant was deliberately indifferent to that risk of harm, which is to say, that "the official knows of and disregards an excessive risk to inmate health or safety." *Haywood v. Hathaway*, 842 F.3d 1026, 1030-31 (7th Cir. 2016).

In this case, the removal of hygiene products from Mr. Smith's cell for ten days did not amount to an objectively serious condition under the Eighth Amendment. During this time, it is undisputed that Mr. Smith was allowed to shower three times weekly. (Dkt. 31-1 at 19.) The Seventh Circuit has repeatedly held that limiting prisoners to showering only once a week does not violate the Eighth Amendment. *See Jaros*, 684 at 671 (collecting cases).

The record does not support a reasonable conclusion that Mr. Smith needed to shower more often than other prisoners, or that the showers he was permitted were somehow inadequate. *E.g.*, Dkt. 31-1 at 15, 20 (Mr. Smith agreeing that his showers were sufficient to perform ghusl, which requires him to perform a full body shower with "water" and "something to cleanse your body" in

order "to get [the] body back in a state of purification."). There is no suggestion, for example, that he developed a rash, sores, infections, or an especially foul odor, or that his health was otherwise impacted or in danger of being impacted by the removal of his hygiene products for ten days. Further, temporary discomforts do not violate common standards of decency. *Cf. Lunsford v. Bennett*, 17 F.3d 1574, 1580 (7th Cir. 1994). Accordingly, the Defendants' Motion for Summary Judgment on Mr. Smith's Eighth Amendment claims is **granted**.

**B.     Fourteenth Amendment**

Mr. Smith argues that the removal of property from his cell for ten days violated his right to due process because the Fourteenth Amendment guarantees "an opportunity for a hearing before being deprived of his property." (Dkt. 1 at ¶ 24.)

The Seventh Circuit has held that the ITCA "provides a constitutionally adequate remedy to address property loss caused by a state officer" and precludes due process claims for property loss in federal court. *Belcher v. Norton*, 497 F.3d 742, 751 (7th Cir. 2007) (citing Ind. Code § 34-13-3-1 to 25). A prisoner seeking to pursue remedies through the ITCA must file "an administrative claim with the department of correction to recover compensation for the loss of the offender's personal property alleged to have occurred during the offender's confinement." Ind. Code § 34-13-3-7.

Mr. Smith argues that the ITCA is not adequate because it "only applies to property that has been lost, stolen or destroyed by state employees." (Dkt. 37 at 4.) He also argues that the Defendants temporarily deprived him of his property without providing a hearing in violation of to the prison's disciplinary policy. *Id.* at 4-5. But as the Defendants point out, the Seventh Circuit recently held that a prisoner's due process claims involving similar facts were properly dismissed. (Dkt. 40 at 3 (citing *Pannell v. Eads*, 856 F. App'x 628, 630 (7th Cir. 2021)).)

6

In *Pannell*, a prisoner was prohibited from keeping all 90 of his legal books in his cell at any one time. 856 F. App'x at 629. Instead, he was allowed to keep 10 of these books in his cell and was only able to use the remaining 80 books three times a week in the law library. *Id.* The Seventh Circuit affirmed the dismissal of the prisoner's due process claims because the ITCA provided an adequate post-deprivation remedy. *Id.* at 30. The Seventh Circuit also rejected the prisoner's argument that the disciplinary process required that he be given a hearing at which he could contest the allegations against him "[b]efore imposing any disciplinary action." *Id.*

In line with *Pannell* and other Seventh Circuit case law, the Court finds that Mr. Smith's due process claims must be dismissed because under the circumstances here, the ITCA provides an adequate post-deprivation remedy. Accordingly, the Defendants' motion for summary judgment on Mr. Smith's Fourteenth Amendment claims is **granted**.

### C.   Religious Land Use and Institutionalized Persons Act (RLUIPA)

#### 1.   Legal Standard

RLUIPA prohibits prisons that receive federal funds from imposing a substantial burden on an inmate's religious exercise unless prison officials can demonstrate "that imposition of the burden on that person (1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest." *Koger v. Bryan*, 523 F.3d 789, 798 (7th Cir. 2008) (quoting 42 U.S.C. § 2000cc–1(a)(1)–(2)).  It allows plaintiffs to obtain "appropriate relief against a government," *see* 42 U.S.C. § 2000cc-2, but RLUIPA does not waive a state government's Eleventh Amendment sovereign immunity as to claims for damages. *Sossamon v. Texas*, 563 U.S. 277, 285-86 (2011). Thus, a state prisoner suing under RLUIPA may only seek injunctive or declaratory relief. *Id.*

If a prisoner is transferred to another prison, his request for injunctive relief against officials at the first prison is moot unless he can demonstrate that he is likely to be retransferred. *Higgason v. Farley*, 83 F.3d 807, 811 (7th Cir. 1996); *see also Knox v. McGinnis*, 998 F.2d 1405, 1413 (7th Cir. 1993) (prisoner's injunctive relief claim based on disciplinary segregation is rendered moot by his transfer to general population; "we must assume that Knox will abide by prison rules" in the future and avoid disciplinary segregation).

A state prisoner's RLUIPA claim is therefore moot when the prisoner has been transferred to another facility unless the prisoner's RLUIPA claim challenges a statewide policy. *See Maddox v. Love*, 655 F.3d 709, 716 (7th Cir. 2011) ("Maddox has not shown a realistic opportunity that he will again be incarcerated in the same state facility and therefore be subject to the actions of which he complains here. As such, any relief that our judgment might permit would be purely speculative in nature.") (cleaned up); *but see West v. Grams*, 607 F. App'x 561, 566 (7th Cir. 2015) (RLUIPA claim not moot by facility transfer where the plaintiff challenges a statewide policy).

In this case, Mr. Smith's religious items were removed from his cell for ten days while he was incarcerated at Pendleton and placed on strip cell status for allegedly assaulting a correctional officer. He has since been transferred to MCF, where he has not had his religious items removed from his cell for any period of time. Further the removal of his religious items was a function of Pendleton Facility Directive 48, which is not a statewide policy. Accordingly, Mr. Smith's RLUIPA claim is moot, and the Defendants' motion for summary judgment on the RLUIPA claim is **granted**.

**D.   State Law Claims**

The only remaining claims in this lawsuit are Mr. Smith's claims under the Indiana Constitution. The Court ultimately has discretion whether to retain supplemental jurisdiction over

these claims. *Carlsbad Tech., Inc. v. HIF Bio, Inc.*, 556 U.S. 635, 639 (2009); *see* 28 U.S.C. § 1367(c) ("The district courts may decline to exercise supplemental jurisdiction over a claim if the district court has dismissed all claims over which it has original jurisdiction.") (cleaned up). When deciding whether to exercise supplemental jurisdiction, "'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity.'" *City of Chicago v. Int'l Coll. of Surgeons*, 522 U.S. 156, 173 (1997) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 n.7 (1988)).

The Seventh Circuit has made clear that "the usual practice is to dismiss without prejudice state supplemental claims whenever all federal claims have been dismissed prior to trial." *Groce v. Eli Lilly*, 193 F.3d 496, 501 (7th Cir. 1999); *see Sharp Electronics Corp. v. Metropolitan Life Ins. Co.*, 578 F.3d 505, 514 (7th Cir. 2009) ("Normally, when all federal claims are dismissed before trial, the district court should relinquish jurisdiction over pendent state-law claims rather than resolving them on the merits.") (citation and quotation marks omitted).

Exceptions to the general rule exist: "(1) when the statute of limitations has run on the pendent claim, precluding the filing of a separate suit in state court; (2) substantial judicial resources have already been committed, so that sending the case to another court will cause a substantial duplication of effort; or (3) when it is absolutely clear how the pendent claims can be decided." *Davis v. Cook Cnty.*, 534 F.3d 650, 654 (7th Cir. 2008) (quoting *Wright v. Associated Ins. Companies Inc.*, 29 F.3d 1244, 1251 (7th Cir. 1994) (internal quotation marks omitted)).

Here, the statute of limitations has not run on these claims, as both federal and state law toll the relevant limitations period when claims are pending in a civil action (except in limited circumstances not present here). *See* 28 U.S.C. § 1367(d); Ind. Code § 34-11-8-1; *see also Hemenway v. Peabody Coal Co.*, 159 F.3d 255, 266 (7th Cir. 1998). Although some resources

9

have been expended on these claims, many of these resources could be re-used in state court. Finally, it is not absolutely clear how these claims should be resolved. For these reasons, the Court exercises its discretion to relinquish supplemental jurisdiction over Mr. Smith's state law claims. Accordingly, Mr. Smith's state law claims are **dismissed for lack of jurisdiction** and he may pursue them in state court if he so desires.

## IV. CONCLUSION

The Defendants' Motion for Summary Judgment, Dkt. [31], is **GRANTED**. Mr. Smith's Eighth Amendment, Fourteenth Amendment, and RLUIPA claims are **DISMISSED with prejudice**. His state law claims are **DISMISSED without prejudice**.

Final judgment in accordance with this Order will issue in a separate document.

**SO ORDERED**.

Date: 3/17/2023

Hon. Tanya Walton Pratt, Chief Judge
United States District Court
Southern District of Indiana

DISTRIBUTION:

Aaron J. Smith, #167146
MIAMI CORRECTIONAL FACILITY
Inmate Mail/Parcels
3038 West 850 South
Bunker Hill, Indiana  46914-9810

Julie Tront
OFFICE OF INDIANA ATTORNEY GENERAL
julie.tront@atg.in.gov